1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

GAIL MARIE RIFFLE,

11

Plaintiff,

CASE NO. 3:15-CV-05788-DWC

12

v.

ORDER ON PLAINTIFF'S
COMPLAINT

13

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

14

Defendant.

15

16      Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

17   denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental

18   Security Income ("SSI") Benefits. The parties have consented to proceed before a United States

19   Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule

20   MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 7.

21      After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

22   erred by failing to consider one opinion by Dr. Alan Fine, and failing to properly evaluate Dr.

23   Fine's other opinions. Therefore, this matter is reversed and remanded, pursuant to sentence four

24   of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

## PROCEDURAL& FACTUAL HISTORY

On December 9, 2010, Plaintiff filed applications for DIB and SSI. *See* Dkt. 9, Administrative Record ("AR") 177-185. Plaintiff alleges she became disabled on October 15, 2010, due to major depressive disorder, fibromyalgia, migraines, sleep disruption, and high pain levels. *See* AR 204.  Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 84-123. A hearing was held before ALJ Laura Valente on June 20, 2011, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 37. On July 27, 2012, ALJ Valente found Plaintiff was not disabled within the meaning of Sections 1614(a)(3)(A), 216(i), and 223(d) of the Social Security Act. AR 30. Plaintiff's request for review of her decision was denied by the Appeals Council on September 10, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481.

On October 29, 2013, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. On April 11, 2014, the Hon. Mary Alice Theiler entered a stipulated order of remand for further administrative proceedings. *Riffle v. Colvin I*, 2:13-cv-01949-MAT, Dkt. 27 (W.D. Wash., Apr. 11, 2014). On June 16, 2015, a new ALJ, Robert Kingsley,[1] held a second hearing. AR 606. The ALJ issued a new decision on August 28, 2015, again finding Plaintiff was not disabled within the meaning of Sections 1614(a)(3)(A), 216(i), and 223(d) of the Social Security Act. AR 596-97. On November 2, 2015, Plaintiff filed this complaint seeking judicial review of the Commissioner's decision on remand.

Plaintiff argues the second denial of benefits should be reversed and remanded for the immediate calculation of benefits, because: 1) the ALJ improperly rejected the opinions of five

---

[1] All further references to "ALJ" are to ALJ Kingsley.

1   treating and examining doctors, as well as two non-examining doctors, when assessing Plaintiff's

2   residual functional capacity ("RFC"); and 2) the ALJ's findings at Step Five of the sequential

3   evaluation were based on a flawed RFC. Dkt. 11, p. 1.

4   **STANDARD OF REVIEW**

5   Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

6   security benefits only if the ALJ's findings are based on legal error or not supported by

7   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

8   Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

9   more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

10  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

11  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

12  **DISCUSSION**

13  I.   Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

14       **A. Standard**

15  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

16  opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

17  821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.

18  Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

19  examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

20  set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

21  *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ

22  can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

23  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

24

1   F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

2   explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

3   157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant

4   probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

5   (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

6   F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for

7   disregarding [such] evidence." *Flores*, 49 F.3d at 571.

8          In general, more weight is given to a treating medical source's opinion than to the

9   opinions of those who do not treat the claimant.  *Lester*, 81 F.3d at 830 (*citing Winans v. Bowen*,

10   853 F.2d 643, 647 (9th Cir. 1987)). "Because treating physicians are employed to cure and thus

11   have a greater opportunity to know and observe the patient as an individual, their opinions are

12   given greater weight than the opinion of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285

13   (9th Cir. 1996) (*citing Rodriguez v. Bowen*, 876 F.2d 759, 761-762 (9th Cir. 1989); *Sprague v.*

14   *Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "A treating physician's medical opinion as to the

15   nature and severity of an individual's impairment must be given controlling weight if that

16   opinion is well-supported and not inconsistent with the other substantial evidence in the case

17   record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (*citing* SSR 96-2p, *available*

18   *at* 1996 WL 374188); *see also Smolen*, 80 F.3d at 1285. Even when not controlling, "treating

19   source medical opinions are still entitled to deference and must be weighed using all of the

20   factors provided in [20 C.F.R. §§ 404.1527 and 416.927]. SSR 96-2p, *available at* 1996 WL

21   374188. When an ALJ discounts the opinion of a treating physician, the ALJ must identify

22   "specific reasons for the weight given to the treating source's medical opinion, supported by the

23   evidence in the case record, and must be sufficiently specific to make clear to any subsequent

24

1  reviewers the weight the adjudicator gave to the [] opinion and the reasons for that weight." SSR

2  96-2p, *available at* 1996 WL 374188.

3  **B.  Application of Standard**

4       The ALJ determined Plaintiff has the residual functional capacity to perform light work,

5  subject to these additional limitations: she needs a brief opportunity to sit or stand at her

6  workstation on an hourly basis; she can sit for six hours with generally-recognized breaks; she

7  can perform simple repetitive tasks and detailed tasks consistent with Specific Vocational

8  Preparation ("SVP") level 4 with tasks that can be performed at a pace consistent with the

9  generally-accepted breaks. AR 587. Plaintiff argues this finding was erroneous, as the ALJ failed

10 to offer specific and legitimate reasons to reject the more restrictive limitations opined to by

11 Plaintiff's treating physician, Dr. Alan Fine, as well as six opinions from various examining and

12 consulting psychologists.

13       1. *Alan Fine, M.D.*

14       Dr. Fine has been Plaintiff's treating physician for over twenty years. AR 574, 631, 1305.

15 Over the course of this treating relationship, Dr. Fine has diagnosed Plaintiff with numerous

16 disorders, including fibromyalgia, chronic migraines, major depressive disorder, lumbar back

17 sprain, anxiety disorder, right-knee tendonitis, and carpal tunnel syndrome. *See* AR 263, 272,

18 288, 302-03, 1067, 1305. Between 2009 and 2015, Dr. Fine rendered seven separate opinions

19 concerning Plaintiff's limitations and restrictions:

20   - In June, 2009, Dr. Fine opined Plaintiff's medical impairments would disable her
        from work for 90 days. AR 909.
21
   - In April, 2011, Dr. Fine completed a Washington State Department of Social and
22     Health Services form ("DSHS form") limiting Plaintiff to lifting no more than 10
        pounds frequently, and opining Plaintiff would be unable to work due to major
23     depression, fibromyalgia with chronic pain, lack of sleep and emotional distress
        AR 394-96.
24

- In October, 2011, Dr. Fine submitted an opinion to Plaintiff's employer in support of long term leave under the Family Medical Leave Act. AR 541-43. In this opinion, Dr. Fine indicated Plaintiff would be unable to work more than 10 hours per week between October, 2010 and December, 2011, as a result of her fibromyalgia, generalized anxiety disorder, major depressive disorder, and insomnia. AR 541-43.

- In December, 2012, Dr. Fine indicated Plaintiff had exhibited positive tender points and been diagnosed with fibromyalgia by a rheumatologist in 2001, and that Plaintiff has been doing worse over the past year as a result of severe pain and depression. AR 527.

- In May, 2012, Dr. Fine completed a Fibromyalgia Medical Source Statement. AR 574-77. On this form, Dr. Fine indicated Plaintiff had various symptoms, including multiple tender points, nonrestorative sleep, morning stiffness, chronic fatigue, numbness and tingling, as well as several other symptoms including anxiety, depression, headaches, and carpal tunnel syndrome. AR 574. Dr. Fine indicated Plaintiff's medication might lead to drowsiness. AR 575. Dr. Fine also opined Plaintiff would be able to sit for no more than 30 minutes at a time, stand for no more than 1 hour at a time, and in any event would be able to sit/stand for no more than 2 hours in an eight hour working day. AR 575. Dr. Fine also opined Plaintiff would need at least one unscheduled break of one full day, per week. AR 576.

- In May, 2013, Dr. Fine completed a second DSHS form, in which he opined Plaintiff would be unable to lift at least two pounds and is incapable of any work as a result of depression, anxiety, fibromyalgia, and migraines. AR 955-56.

- Finally, in May, 2015, Dr. Fine completed a form on which he opined Plaintiff would be unable to lift more than 10 pounds for up to 1/3 of an 8 hour day, stand and walk for no more than 2 hours in an 8 hour day, sit for no more than 2 hours in an 8 hour day, with no more than 30 minutes of continuous sitting, as a result of her fibromyalgia and migraine headaches. AR 1306-09. Dr. Fine also opined Plaintiff would have significant limitations as a result of her mental health impairments. AR 1310. Notably, on this form, Dr. Fine: documented trigger point tenderness; noted his reliance on a neurologist's report of migraines and nerve conduction studies; and indicated he believed Plaintiff's complaints of pain. AR 1307, 1309-10.

In addition to these opinions, the record contains approximately five hundred pages of longitudinal treatment notes from Dr. Fine and other providers in his medical group. AR 262-374, 400-553, 909, 1063-1299.

1    The ALJ gave little weight to Dr. Fine's opinions for the following four reasons:

2    [1] [I]t is quite conclusory, providing very little explanation of the evidence relied
     on in forming that opinion. [2] Furthermore, the doctor's evaluations of the

3    claimant did not have the type of significant clinical abnormalities to substantiate
     the opinion (*See, e.g.*, [AR 431, 498; and 1071, 1156, 1191]). Specifically, the

4    doctor repeatedly noted, "she looks well." [3] In addition, it appears the doctor
     relied heavily on the claimant's subjective report of symptoms and limitations,

5    which are not fully credible for the reasons stated in this decision. Specifically,
     there was evidence the claimant had a tendency to over report symptoms (*See*

6    [AR 953]). [4] The doctor's opinion also rests in part on an assessment of
     impairments (e.g., depression and anxiety) outside the doctor's area of expertise

7    (family medicine).

8    AR 593-94 (numbering added).

9                              a.   *Dr. Fine's May, 2015 Opinion*

10       At the outset, Plaintiff argues the ALJ failed to consider two of Dr. Fine's opinions, one

11   made in 2012, and one made in May, 2015. Dkt. 11, p. 8, AR 574-77, 1305-12. Defendant

12   correctly notes the ALJ did consider Dr. Fine's 2012 opinion. AR 574, 593. However, Defendant

13   concedes the ALJ did not cite or reference Dr. Fine's May, 2015 opinion in the written decision.

14   AR 593-94. Instead, Defendant argues the ALJ's failure to discuss Dr. Fine's May, 2015 opinion

15   was harmless error because the 2015 opinion "suffered from the same deficiencies that caused

16   the ALJ to discount the others—it was a form where Dr. Fines [sic] offered conclusory opinions

17   regarding Plaintiff's physical limitations without adequate explanation or reference to clinical

18   finding that could explain the degree of limitation assessed." Dkt. 12, p. 8.[2] The Court disagrees.

19

20

21        [2] Defendant cites to *Molina v. Astrue* to argue, since Dr. Fine's 2015 opinion suffers from
     the same deficiencies as the other opinions rejected by the ALJ, any error in failing to consider
     Dr. Fine's 2015 opinion was harmless. *Molina v. Astrue*, 674 F.3d 1104,1117 (9th Cir. 2012).

22   *Molina*, however, is distinguishable. The section of *Molina* cited by Defendant pertains to
     harmless error in failing to discuss duplicative *lay witness* testimony, rather than medical opinion

23   evidence. *Id.* Further, unlike lay witness testimony, Social Security regulations and rulings
     require an ALJ to consider *all* medical opinions in the record, regardless of source. 20 C.F.R. §§

24   404.1520; 404.1527(b) & (c).

1  An ALJ's failure to discuss a physician's opinion is not harmless error. *See Hill v. Astrue*, 698

2  F.3d 1153, 1160 (9th Cir. 2012). When the ALJ ignores significant and probative evidence in the

3  record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete residual

4  functional capacity determination." *Id.* at 1161. *See also Vincent*, 739 F.2d at 1394-95 (*quoting*

5  *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

6        Further, the ALJ discounted Dr. Fine's May, 2015 opinion and his other opinions in part

7  because Dr. Fine allegedly did not explain the basis of his opinions, and in part because the ALJ

8  concluded Dr. Fine's opinions were based largely on Plaintiff's subjective complaints rather than

9  on the objective medical evidence. However, Dr. Fine not only explains the basis of his May,

10  2015 opinion, he indicates he relied upon examinations revealing trigger point tenderness as his

11  basis for attributing many of Plaintiff's limitations to fibromyalgia. AR 1307. Dr. Fine also cited

12  positive trigger point examination findings and nerve conduction studies for his diagnosis of

13  carpal tunnel syndrome, and cited a neurologist's report[3] to conclude Plaintiff had debilitating

14  migraine symptoms. AR 1176, 1307, 1309.

15        The ALJ must consider all medical opinions in formulating a residual functional capacity.

16  20 C.F.R. §§ 404.1520; 404.1527(b) & (c). Thus, Dr. Fine's 2015 opinion is significant,

17  probative evidence, which the ALJ could not ignore. *See Vincent*, 739 F.2d at 1394-95 (*quoting*

18  *Cotter*, 642 F.2d at 706). Nor was the ALJ's failure to consider Dr. Fine's May, 2015 opinion

19  harmless: as discussed below, many of the ALJ's arguments for discounting Dr. Fine's opinions

20  _____

21        [3] This is notable as Plaintiff argues Dr. Fine's various opinions were supported by reports
and examinations from six other doctors, a psychiatrist, neurologist, three physical therapists,

22  nine physician's assistants, and two mental health therapists. Dkt. 11, p. 10. Defendant suggests
this argument is without merit because "there is no evidence that Dr. Fine relied on *any* of these

23  records as support for his opinions." Dkt. 12, p. 7 (emphasis added). Dr. Fine's explicit reference
to his reliance on a neurologist's report in the one opinion ignored by the ALJ undercuts such an

24  argument. AR 1307.

1  are undermined by Dr. Fine's discussion of objective medical evidence and reports from referral

2  physicians in the May, 2015 opinion. Further, the consistency of a medical opinion with other

3  opinions, as well as the whole record, is a factor an ALJ must consider when determining the

4  weight to give to a medical opinion. 20 C.F.R. § 404.1527(c)(4).  While the ALJ may not

5  necessarily be bound by Dr. Fine's May, 2015 opinion, the ALJ cannot reject it through silence;

6  the ALJ must present at least a specific and legitimate reason for doing so. *See Hill*, 698 F.3d at

7  1160. Thus, the ALJ's failure to discuss Dr. Fine's May, 2015 opinion was harmful error.

8  b.  *Dr. Fine's Other Opinions*

9  The ALJ's reasons for discounting the remainder of Dr. Fine's opinions, further, are not

10  legally sufficient reasons.[4] First, the ALJ discounted Dr. Fine's opinions because they were

11  "quite conclusory" and did not explain what evidence Dr. Fine relied on in formulating his

12  opinions. AR 593. An ALJ may properly discount a treating physician's opinion if it is brief,

13  conclusory, and inadequately supported by clinical findings or by the record as a whole. *See*

14  *Batson v. Comm., Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). However, when a

15  treating physician has significant experience with a claimant and provides numerous treatment

16  records, the fact the treating physician completes a check-box form or renders an otherwise

17  conclusory opinion is neither a specific and legitimate, nor clear and convincing, reason for

18  discounting the treating physician's testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th

19  Cir. 2014). Instead, an opinion based on treatment notes and personal experience is "entitled to

20

21

22  [4] Plaintiff argues, as Dr. Fine is a treating physician, the ALJ must offer clear and convincing reasons for discounting his opinions. However, Dr. Fine's opinions were contradicted by Dr. Fligstein, Dr. Gardner, and Dr. Moore. AR 89, 97, 108, 119, 255, 592-93. Thus, the ALJ

23  was only required to offer specific and legitimate reasons, supported by substantial evidence, for giving Dr. Fine's opinions less weight. *See Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th

24  Cir. 2006). In any event, the ALJ offered reasons which are insufficient under either standard.

1   weight that an otherwise unsupported and unexplained check-box form would not merit." *Id.*

2   Here, the record contains approximately 500 pages of treatment notes from Dr. Fine and other

3   specialists and health care providers in his medical group. *See* AR 262-374, 400-553, 909, 1063-

4   1299. These notes indicate Dr. Fine documented stiff neck muscles, abdominal tenderness

5   without mass, tenderness at the posterolateral aspect of Plaintiff's right knee, and tenderness at

6   multiple trigger points. AR 263-64, 288, 302-03, 527, 574-77, 1116-18. Dr. Fine also referred

7   Plaintiff to various providers within his medical group for further consultation. *See, e.g.*, AR

8   266-67, 291-92, 298-99, 305-06, 311-12, 326-27, 331-39, 342-43, 348-49, 351-53, 357-59, 426-

9   29, 444-476, 478-81, 527, 542, 1085-87, 1089-93, 1100-17, 1176-79, 1110-05, 1164-65, 1183-

10   86, 1120-23, 1125-28, 1134-36, 1142-44, 1192-95, 1201-08, 1230-33, 1240-46. As reflected

11   most clearly in Dr. Fine's May, 2015 opinion, Dr. Fine relied upon these reports in formulating

12   his opinions concerning Plaintiff's functional limitations. *See* AR 1307.  Thus, by virtue of Dr.

13   Fine's treating relationship and the large volume of treatment notes in the record, ALJ was

14   required to look beyond the conclusory nature of Dr. Fine's written opinions and consider the

15   treatment notes.

16         Second, the ALJ concludes "[Dr. Fine's] evaluations of [Plaintiff] did not have the type

17   of significant clinical abnormalities to substantiate the opinion." AR 594. But, the only specific

18   reason ALJ cites for this conclusion is the fact Dr. Fine noted Plaintiff "looks well" on three

19   occasions. AR 594, 1071, 1156, 1191. This finding ignores the large balance of Dr. Fine's

20   treatment notes, as well as the nature of Plaintiff's condition. Fibromyalgia is notable primarily

21   for its lack of usual outward signs. *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004);

22   *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (9th Cir. 2003). In fact, throughout his notes, Dr.

23   Fine routinely documents one of the few objective diagnostic criteria available for fibromyalgia:

24

tenderness in multiple trigger points. AR 263-64, 527, 574-77, 1116-18. *See Samoans v. Colvin*, 618 Fed.Appx. 340, 341-42 (9th Cir. 2015). *See also* SSR 12-2p, *available at* 2012 WL 3104869, *3. Also, on at least one occasion, Dr. Fine indicates he administered trigger point injections. AR 1116-18. As for Plaintiff's other medical conditions, Dr. Fine referred Plaintiff to physical therapy, where she demonstrated poor posture, reduced range of motion, and an inability to tolerate touch. *See, e.g.*, AR 1121, 1142, 1209-10. Dr. Fine also referred her for neurological consultations for her migraines, and mental health consultations for her depression and anxiety. *See* AR 263-64, 280-81, 316, 1092-93, 1307. The fact the ALJ relies on three isolated reports of Plaintiff "look[ing] well" to conclude Dr. Fine's treatment notes do not support his opinion, without reference to the bulk of Dr. Fine's treatment notes, is improper cherry-picking and does not constitute substantial evidence. AR 1071, 1156, 1191. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]he ALJ improperly cherry-picked some of Dr. Dees's characterizations of Ghanim's rapport and demeanor instead of considering these factors in the context of Dr. Dees's diagnoses and observations of impairment.").

Third, the ALJ found Dr. Fine relied heavily on the claimant's subjective report of symptoms and limitations, which the ALJ had previously found not to be credible. AR 580-92, 594. Plaintiff does not contest the ALJ's adverse credibility finding, but instead argues the ALJ erred by assuming Dr. Fine's opinions were based *more* heavily on the claimant's subjective report of symptoms rather than on his clinical observations and objective medical evidence. An "ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."

1    *Ghanim,* 763 F.3d at 1162.  Here, Dr. Fine's treatment notes reflect he referred Plaintiff to, and

2    received updates from, numerous specialists and health care professionals within Dr. Fine's

3    medical group. *See, e.g.*, AR 266-67, 291-92, 298-99, 305-06, 311-12, 326-27, 331-39, 342-43,

4    348-49, 351-53, 357-59, 426-29, 444-476, 478-81, 527, 542, 1085-87, 1089-93, 1100-17, 1176-

5    79, 1110-05, 1164-65, 1183-86, 1120-23, 1125-28, 1134-36, 1142-44, 1192-95, 1201-08, 1230-

6    33, 1240-46. *See also* AR 1307. Dr. Fine also indicated he based some of his opinions on

7    physical examinations as well as Plaintiff's reports, and documented objective signs of

8    fibromyalgia and Plaintiff's other claimed impairments. *See* AR 263-64, 527, 574-77, 1116-18.

9    Given the breadth and depth of Dr. Fine's longitudinal treating record, the ALJ's finding Dr.

10   Fine's opinions were based *more heavily* on Plaintiff's self reports, rather than Dr. Fine's clinical

11   observations, was unsupported by even a mere scintilla of evidence, let alone substantial

12   evidence.

13        The fourth and final reason the ALJ cites for rejecting Dr. Fine's opinions is the "opinion

14   also rests in part on an assessment of impairments (e.g., depression and anxiety) outside the

15   doctor's area of expertise (family medicine)."  AR 594.  Although a doctor's area of specialty is

16   a relevant factor in determining the relative weight an ALJ may give to an opinion, a doctor does

17   not have to be a specialist in mental health in order to provide an opinion regarding mental health

18   limitations. *See Sprague*, 812 F.2d at 1232. "[I]t is well established that primary care physicians

19   (those in family or general practice) 'identify and treat the majority of Americans' psychiatric

20   disorders.'" *Id.* (*quoting* C. Tracy Orleans, Ph.D., Linda K. George, Ph.D., Jeffrey L. Houpt,

21   M.D., and H. Keith H. Brodie, M.D., *How Primary Care Physicians Treat Psychiatric*

22   *Disorders: A National Survey of Family Practitioners*, 142:1 Am.J. Psychiatry 52 (Jan. 1985).

23   *See also Nguyen v. Barnhart*, 170 Fed.Appx. 471, 473 (9th Cir. 2006) ("Dr. Sidrick is qualified

24

1 to give her medical opinion as to Nguyen's mental state as it relates to his inability to work, and

2 the ALJ may not discredit her opinion on the ground that she is not a board certified psychiatrist.

3 Rather, Dr. Sidrick's opinion as to the combined impact of Nguyen's limitations—both physical

4 and mental—is entitled to special weight.")(internal citations omitted)(*citing Lester*, 81 F.3d at

5 833). Here, the AJL does not cite Dr. Fine's lack of specialization in mental health as a basis to

6 give more weight to the contradictory opinion of a mental health specialist. AR 593. Instead, the

7 ALJ found Dr. Fine's lack of specialization in mental health care to be a sufficient reason, in and

8 of itself, to disregard Dr. Fine's opinions concerning Plaintiff's mental health.  This is not a

9 specific and legitimate reason, supported by substantial evidence, for the ALJ to discount Dr.

10 Fine's opinions. *See Sprague*, 812 F.2d at 1232; *Nguyen*, 170 Fed.Appx. at 173.

11   Because the ALJ failed to consider Dr. Fine's May, 2015 opinion, and because the ALJ

12 otherwise failed to provide specific and legitimate reasons for discounting Dr. Fine's other

13 opinions, the ALJ committed harmful error requiring remand.

14       *2. Peter Moore, Psy.D.*

15   Dr. Moore examined Plaintiff on March 3, 2011. AR 255. On mental status examination,

16 Dr. Moore documented depressed mood, depressed and anxious affect, and noted Plaintiff was

17 teary and fidgety throughout. AR 256. However, the balance of Plaintiff's examination was

18 otherwise unremarkable. AR 256. Dr. Moore diagnosed Plaintiff with dysthymic disorder and

19 panic disorder without agoraphobia, and documented fibromyalgia, migraine headaches, and

20 lumbar sprain by diagnosis on Axis III. AR 257. Dr. Moore ultimately concluded Plaintiff can

21 readily understand and follow simple to moderately complex instructions, use good judgment in

22 solving problems and responding to challenges, and recall simple commands either immediately

23 or after a brief delay was within normal limits. AR 257. However, Dr. Moore also concluded

24

1  Plaintiff's pain disorder and difficulties managing her mood would be impairments to successful

2  functioning, and opined Plaintiff would have moderate difficulty persevering at tasks "due to her

3  pain complaints and anxiety and depression." AR 257.

4        The ALJ gave great weight to most of Dr. Moore's opinion. However, the ALJ only gave

5  some weight to Dr. Moore's conclusion Plaintiff would have moderate difficulty persevering at

6  tasks, because: "it appears the doctor relied heavily on the claimant's subjective report of

7  symptoms and limitations, which are not fully credible for the reasons stated in this decision."

8  AR 592. As with Dr. Fine, Plaintiff argues the ALJ erroneously assumed Dr. Moore's opinion

9  was based more heavily on Plaintiff's subjective complaints rather than on Dr. Moore's clinical

10 findings or examination results. Dkt. 11, p. 12-13. *See Ghanim*, 763 F.3d at 1162. Here,

11 however, Dr. Moore specified which aspects of his examination supported his specific opinions.

12 AR 257. While Dr. Moore indicated his mental status examination results supported most of his

13 opined limitations, his discussion of Plaintiff's ability to persevere in tasks focuses primarily on

14 Plaintiff's reports of her medical and social history. AR 257. It is not inappropriate for an ALJ to

15 reject an examining psychologist's opinion when the opinion is based largely on self-reports

16 which have properly been found incredible. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

17 Cir. 2001). *See also Woodsum v. Astrue*, 2012 WL 1388346, at *6-*7 (W.D. Wash. 2012). The

18 ALJ's interpretation of Dr. Moore's report was rational and supported by substantial evidence.

19 Thus, the ALJ did not err by giving less than full weight to Dr. Moore's opinion.

20                 3. *David Widlan, Ph.D.*

21       Dr. Widlan examined Plaintiff on January 27, 2012. AR 558. On mental status

22 examination, Plaintiff presented with depressed mood and restricted affect, but was otherwise

23 within normal limits. AR 556, 559.   Dr. Widlan diagnosed Plaintiff with major depressive

24

1  disorder, recurrent, severe without psychotic features, generalized anxiety disorder, rule-out

2  somatization disorder, and documented Plaintiff's migraines, high blood pressure, fibromyalgia,

3  bilateral carpal tunnel syndrome, and sleep apnea on Axis III. AR 555. As a result of these

4  conditions, Dr. Widlan opined Plaintiff would have marked limitations in her ability to: be aware

5  of normal hazards and take appropriate precautions; communicate and perform effectively in a

6  work setting with public contact or limited public contact; and maintain appropriate behavior in a

7  work setting. AR 556. Dr. Widlan also opined Plaintiff "would likely struggle to complete tasks

8  that are not highly routine. Mental health issues would significantly impede employment." AR

9  557.

10       The ALJ gave little weight to Dr. Widlan's opinion for two reasons:

11       [I]t is inconsistent with the doctor's clinical findings. Specifically, the doctor
         found she was cooperative and she performed well on mental status testing. It
12       appears the doctor relied heavily on the claimant's subjective report of symptoms
         and limitations, which are not fully credible for the reasons stated in this decision.

13  AR 593. Unlike Dr. Moore, Dr. Widlan specifically cited to Plaintiff's mental status examination

14  results as the basis of his opinion Plaintiff would struggle with task completion. AR 556. *See*

15  *Ghanim*, 763 F.3d at 1162. However, based on a review of the mental status examination results,

16  the ALJ could reasonably interpret Plaintiff's performance on mental status examination as

17  inconsistent with Dr. Widlan's opined limitations. *See Morgan v. Commissioner of Soc. Sec.*

18  *Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999); *Tommasetti*, 533 F.3d at 1038. For example,

19  though Dr. Widlan opined Plaintiff would have a moderate limitation in her ability to perform

20  routine tasks without undue supervision, Plaintiff was able to complete serial 7's and 3's, repeat

21  3 of 3 objects after five minutes, repeat digits forward and backward, interpret proverbs, perform

22  in the "non-impaired" range on trail-making tests A and B, and had a fund of knowledge within

23  normal limits. AR 556, 559-62. With the exception of a restricted affect and depressed mood,

Plaintiff's appearance, attitude and behavior, thought content, and orientation were within normal limits. AR 559.  An ALJ may properly discount an examining physician's opinion when it is brief, conclusory, and inadequately supported by clinical findings or by the record as a whole, and the ALJ reasonably did so here. *Batson*, 359 F.3d at 1195 (*citing Tonapetyan*, 242 F.3d at 1149); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Thus, the ALJ did not err by giving less than full weight to Dr. Widlan's opinions.

4. *Victoria McDuffee, Ph.D.*

Dr. McDuffee examined Plaintiff on December 15, 2012. AR 951, 954. On mental status examination, Dr. McDuffee observed rapid, hyperverbal speech with escalating tone, cooperative but dramatic attitude and behavior, restless psychomotor activity, intermittent eye contact, anxious mood and emotionally labile affect. AR 951-52. Plaintiff demonstrated performance within normal limits on testing for memory and concentration, indicating "no cognitive impairment." AR 953. Dr. McDuffee also administered the Minnesota Multiphasic Personality Inventory 2RF, which "raised concerns of her over reporting of symptoms possibly affecting the validity of the protocol." AR 953. Nonetheless, Dr. McDuffee diagnosed Plaintiff with generalized anxiety disorder and depressive disorder, NOS, and documented Plaintiff's fibromyalgia, bilateral carpal tunnel syndrome, mild sleep apnea, migraine headaches, and high blood pressure on Axis III. Dr. McDuffee opined Plaintiff's mental impairments would markedly limit her ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 950-51. Dr. McDuffee also found Plaintiff would have moderate limitations in

her ability to: perform routine tasks without special supervision; adapt to changes in a routine work setting; and make simple work-related decisions. AR 950-51.

The ALJ gave little weight to Dr. McDuffee's opinion Plaintiff would have moderate and marked limitations in cognitive and social functioning for two reasons:

> [1] [I]t is inconsistent with the doctor's clinical findings. Specifically, the doctor found she was cooperative and had normal orientation, perception, memory, fund of knowledge, concentration, and abstract thought. [2] Furthermore, the doctor did not specifically indicate the basis for the moderate and marked limitations.

AR 593 (numbering added). Plaintiff argues these were not specific and legitimate reasons for discounting Dr. McDuffee's opinion. The court disagrees. As with Dr. Widlan, the ALJ could reasonably interpret Plaintiff's performance on mental status examination as inconsistent with Dr. McDuffee's opined limitations. *Morgan*, 169 F.3d at 601-02; *Tommasetti*, 533 F.3d at 1038. Further, the ALJ correctly observed Dr. McDuffee did not explain the basis for many of her opined moderate and marked limitations, especially those which were inconsistent with her mental status examination results. *See Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957. The ALJ did not err by giving Dr. McDuffee's opinion little weight.

### 5. *Jan Kouzes, Ph.D.*

Dr. Kouzes examined Plaintiff on two occasions; first, on January 8, 2014, and second, on January 21, 2015. AR 973, 1009. On mental status examination in both 2014 and 2015, Plaintiff presented with anxious and depressed mood and affect, but otherwise presented within normal limits. AR 976-77, 1012-15. In 2014, Dr. Kouzes diagnosed Plaintiff with major depressive disorder, recurrent, panic disorder without agoraphobia, and post-traumatic stress disorder. AR 974. In 2015, Dr. Kouzes diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, and anxiety disorder NOS. AR 1011. As a result, Dr. Kouzes opined in 2014 that Plaintiff would have marked limitations in her ability to: perform activities within a

1   schedule, maintain regular attendance, and be punctual within customary tolerances without

2   special supervision; complete a normal work day and work week without interruptions from

3   psychologically based symptoms; and maintain appropriate behavior in a work setting. AR 975.

4   Dr. Kouzes also opined Plaintiff would have moderate limitations in her ability to: understand,

5   remember, and persist in tasks by following detailed instructions; adapt to changes in a routine

6   work setting; and set realistic goals and plan independently. AR 975. Dr. Kouzes opined to the

7   same limitations in 2015, except Dr. Kouzes also opined Plaintiff would have moderate

8   limitations in her ability to make simple work related decisions, would have marked, rather than

9   moderate, limitations in her ability to communicate and perform effectively in a work setting,

10  and also opined Plaintiff would only have moderate, rather than marked limitations in her ability

11  to maintain appropriate behavior in a work setting. AR 1012.

12      As with Dr. McDuffee, the ALJ gave little weight to Dr. Kouzes' opinion Plaintiff would

13  have moderate and marked limitations in cognitive and social functioning for two reasons:

14      [1] [I]t is inconsistent with the doctor's clinical findings. Specifically, the doctor
        found she was cooperative with good eye contact. The doctor found she had

15      normal thought process, orientation, perception, memory, fund of knowledge,
        concentration, and abstract thought. [2] Furthermore, the doctor did not

16      specifically indicate the basis for the moderate and marked limitations.

17  AR 593 (numbering added). As with Dr. McDuffee, these were specific and legitimate reasons

18  for the ALJ to discount Dr. Kouzes' opinion. The ALJ could reasonably interpret Plaintiff's

19  performance on mental status examination as inconsistent with Dr. Kouzes's opined limitations.

20  *Morgan*, 169 F.3d at 601-02; *Tommasetti*, 533 F.3d at 1038. Further, the ALJ correctly observed

21  Dr. Kouzes did not explain the basis for many of her opined moderate and marked limitations,

22  especially those which were inconsistent with her mental status examination results. *See Batson*,

23

24

1   359 F.3d at 1195; *Thomas*, 278 F.3d at 957. The ALJ did not err by giving Dr. Kouzes' opinion

2   little weight.

3                   6. *Diane Fligstein*, *Ph.D. & Jerry Gardner, Ph.D.*

4           State Agency Medical Consultants Dr. Fligstein and Dr. Gardner reviewed Plaintiff's

5   medical records on her initial application and on reconsideration with the Washington State

6   Department of Social and Health Services. AR 89, 97, 108, 119. After review, Dr. Fligstein

7   concluded Plaintiff did not have any limitations in understanding and memory, social interaction,

8   or adaptation. AR 91, 97. However, Dr. Fligstein did believe Plaintiff was moderately limited in

9   her ability to maintain attention and concentration for extended periods. AR 91, 97. Dr. Gardner

10  generally agreed with Dr. Fligstein, but also opined Plaintiff would also have moderate

11  limitations in her ability to complete a normal workday and workweek without interruptions

12  from psychologically based symptoms and to perform at a consistent pace without an

13  unreasonable number and length of rest periods. AR 110, 120.

14          The ALJ gave both Dr. Fligstein and Dr. Gardner's opinions less than full weight for

15  three reasons:

16          [1] [T]he opinion regarding the claimant's ability to maintain concentration and
            persist is vague and does not specify what type of tasks she can perform. [2]
17          Furthermore, it is inconsistent with Dr. Shepel's finding that the claimant was
            able to maintain an appropriate level of concentration and worked consistently on
18          tasks throughout many hours of testing without showing any signs of exhaustion
            or physical discomfort [AR 378-93]. [3] In addition, Dr. Gardner's opinion
19          regarding the claimant's ability to adapt is inconsistent with the claimant's
            statements that she handled changes in routine "pretty well, I think I'm usually
20          pretty flexible." [AR 216].

21  AR 593 (numbering added). Plaintiff argues these were not specific and legitimate reasons to

22  discount Dr. Fligstein and Dr. Gardner's opinions. The Court disagrees. First, the ALJ correctly

23  notes Dr. Fligstein and Dr. Gardner's opinion concerning Plaintiff's ability to maintain

24

concentration and persist is vague, and the ALJ may properly discount an opinion which is brief,

conclusory, and inadequately supported by clinical findings. *See Batson*, 359 F.3d at 1195.

Second, the fact Plaintiff was able to maintain concentration and persist throughout many hours

of Dr. Shepel's testing is a material inconsistency with Dr. Fligstein and Dr. Gardner's opinions,

and the ALJ was entitled to rely upon it in discounting Dr. Fligstein and Dr. Gardner's opined

limitations. *See Morgan*, 169 F.3d at 603. Plaintiff argues this was error, as the ALJ also gave

less than full weight to Dr. Shepel's opinions. AR 593. However, the ALJ only gave less than

full weight to Dr. Shepel's *opinions*, due to the fact they were rendered in the context of a

parenting evaluation. AR 593. Dr. Shepel's *observations* of Plaintiff's ability to persist through

hours of testing is inconsistent with Dr. Fligstein and Dr. Gardner's opined limitations,

regardless of the weight the ALJ gave to Dr. Shepel's ultimate conclusions. Finally, the ALJ

discounted Dr. Gardner's opinion concerning Plaintiff's ability to adapt because it was

inconsistent with Plaintiff's statements. Inconsistencies between a claimant's testimony and a

doctor's opinion are specific and legitimate reasons to discount a medical opinion. *See Morgan*,

169 F.3d at 603. The ALJ did not err by giving Drs. Fligstein and Gardner's opinions little

weight.

### 7.  *Tracy Gordy, M.D.*

At Plaintiff's second hearing, the ALJ called consulting psychiatrist Dr. Gordy to provide

his opinions concerning Plaintiff's medical history and the degree of her impairments. AR 612,

828. Based on the medical evidence of record, Dr. Gordy opined Plaintiff would be able to

perform simple repetitive tasks, detailed tasks, and probably complex tasks. AR 612-14. Dr.

Gordy also opined Plaintiff would be able to relate to coworkers, supervisors, and the public. AR

612-14. The ALJ gave Dr. Gordy's opinion great weight because it "reflected a comprehensive

1   review of the medical evidence and it is generally consistent with the clinical findings of

2   treatment providers and examiners," and relied on it in crafting Plaintiff's residual functional

3   capacity. AR 594-95. Plaintiff argues this was error, because "there is no such consistency." Dkt.

4   11, p. 17.

5         Plaintiff has the burden of showing error in the ALJ's decision to credit evidence. *See*

6   *McCloud v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2010). Plaintiff, however, has failed to show

7   how Dr. Gordy's opinion is inconsistent with the medical evidence in the record. Further, as

8   discussed above, the ALJ properly evaluated the opinions of Dr. Moore and Dr. McDuffee, as

9   well as Dr. Shepel, all of which Dr. Gordy cited as the basis for his opinions. AR 255, 378, 612-

10  20, 948. Dr. Gordy's analysis of these opinions and the relative weight he assigned them is

11  consistent with the ALJ's evaluation of Drs. Moore, McDuffee, and Shepel in the written

12  decision. AR 588-91.  *See Tonapetyan*, 242 F.3d at 1149 (noting the opinion of a nonexamining

13  medical consultant "may constitute substantial evidence when it is consistent with other

14  independent evidence in the record."). The ALJ did not err by relying on the opinion of Dr.

15  Gordy.

16  II.   Whether the ALJ Erred by Finding Plaintiff was Capable of Performing Work
        Existing in Substantial Numbers in the National Economy.

17

18        Plaintiff argues the ALJ's error in evaluating the medical opinion evidence resulted in an

    erroneous RFC assessment. In assessing a claimant's RFC, an ALJ is required to consider "all of

19  the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). An ALJ's

20  failure to properly evaluate all of the medical opinion evidence may result in a flawed RFC

21  finding. *See* SSR 96-8-p, 1996 WL 374184 at *2. As the ALJ failed to properly evaluate Dr.

22  Fine's opinions, the ALJ will necessarily have to re-evaluate Plaintiff's RFC on remand, and

23  proceed on to Steps Four and Five, as appropriate.

24

III.    Whether the Case Should be Remanded for an Award of Benefits or Further Proceedings

Plaintiff conclusorily argues the case should be reversed and remanded for the award of benefits, rather than for further proceedings.

Generally, when the Social Security Administration does not determine a claimant's application properly, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has established a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen*, 80 F.3d at 1292. This test, often referred to as the "credit-as-true" rule, allows a court to direct an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (*quoting Smolen*, 80 F.3d at 1292). *See also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Further, even if the ALJ has made the three errors under *Harman* and *Smolen*, such errors are relevant only to the extent they impact the underlying question of Plaintiff's disability. *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005)). Therefore, even if the credit-as-true conditions are satisfied, a court should nonetheless remand the case if

1  "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."

2  *Garrison*, 759 F.3d at 1021 (*citing Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2004)).

3        Here, outstanding issues must be resolved. The record contains conflicting evidence

4  concerning the degree and significance of Plaintiff's impairments, and the ALJ's finding that

5  Plaintiff's testimony concerning the degree and severity of her symptoms was less than fully

6  credible was not challenged on appeal. Thus, there is insufficient evidence in the record to

7  establish Plaintiff should be found disabled as a matter of law. *See Harman*, 211 F.3d at 1180.

8  *See also Treichler*, 775 F.3d at 1105-06. Therefore, the case should be remanded for additional

9  proceedings.

10                      **<u>CONCLUSION</u>**

11        Based on the foregoing reasons, the Court hereby finds the ALJ erred by failing to

12  consider Dr. Fine's May, 2015 opinion, and otherwise failing to properly evaluate Dr. Fine's

13  other opinions. Therefore, the Court orders this matter be reversed and remanded pursuant to

14  sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical opinion

15  evidence and other medical source evidence, re-evaluate Plaintiff's residual functional capacity,

16  and proceed on to Step Four and/or Step Five of the sequential evaluation as appropriate. The

17  ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case

18  should be closed.

19        Dated this 2nd day of May, 2016.

20

21                              _____

22                              David W. Christel
                            United States Magistrate Judge

23

24